IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| WALTER EDWARD HALL             * | |
|         Plaintiff, | |
|     v.                                              * | CIVIL ACTION NO. DKC-06-2456 |
| PATUXENT INSTITUTION, DIRECTOR    * | |
|  OF MENTAL HEALTH | |
| DR. HANSON                                    * | |
| DIRECTOR RANDALL S. NERO | |
| MARY ANN SAAR                            * | |
| COMMISSIONER OF CORRECTION | |
| H.H. TALIB                                      * | |
|         Defendants. | |
|                       ***| |

**MEMORANDUM**

I.  Background

On September 20, 2006, this court received for filing a 42 U.S.C. § 1983 prisoner civil rights complaint seeking declaratory and injunctive relief, along with compensatory and punitive damages, from John Walter Edward Hall ("Plaintiff"), who is confined at the Maryland Correctional Adjustment Center ("MCAC"). The exhaustive complaint contains a panoply of claims related to the psychiatric and medical care Plaintiff received at MCAC. Plaintiff alleges that in spite of his attempts to commit suicide by overdosing on medication, electrocution, and ingesting light bulb materials (metal prongs & glass) and plexiglass[1] in February and May of 2006, and a referral by the resident psychiatrist, the Director of Mental Health at Patuxent refused to admit him into Patuxent Institution's Correctional Mental Health Center ("CMHC") unit.[2]  Paper No. 1.  He asserts he was

---

[1]  Plaintiff claims that the plexiglass had broken off from a shower and was given to him by Sgt. Talib so that he could use it for a suicide attempt. Paper No. 1 at 12 & 18. In an administrative remedy he claimed that Sgt. Talib allowed him to remove and take the plexiglass from an MCAC van. Paper No. 1 at Ex. 14.

[2]  Plaintiff claims he has a mental illness, and submits a number of exhibits from mental health care experts attesting to such a condition. Paper No. 1 at Attachments. The majority of these attachments were composed in 2002 and 2003, when Plaintiff was confined in the Department of Corrections for the State of Washington and from 1997, when Plaintiff was previously confined in the Maryland Division of Correction.

placed into an MCAC "cadre" cell on suicide watch and given no treatment.  *Id*.  Plaintiff also alleges that he was denied medical care at MCAC in February of 2006, when a chemical agent was applied "all over [his] head," and in May of 2006, when he ingested glass.[3]  *Id*.

## II.   Dispositive Filings

On January 29, 2007, Defendants Saar, Rowley, Nero, and Talib filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment, which remains unopposed.[4]  Paper No. 20. The Motion may be determined on the pleadings without oral hearing.  *See* Local Rule 105.6. (D. Md. 2004).  For reasons to follow, Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment, construed as a Motion for Summary Judgment, is hereby granted.

## III.  Standard of Review

Summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  If there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is

---

*Id*. Plaintiff also provides a letter written by his mother and administrative remedies related to missing medical records from the Department of Corrections for the State of Washington.  *Id*.

[3]   On November 1, 2006, Plaintiff filed a packet with this court containing an "order to show cause," complaint, and attachments. Paper No. 7.  The document was filed as correspondence in this case, but levels charges against Drs. Luka, Twelde, and Getachew for the failure to provide him outside gastrointestinal testing given his symptoms and family history.  *Id*.  Those allegations are set out in the complaint filed in *Hall v. Crowder, et al*., Civil Action No. UA-06-2863 (D.Md.), a case which was placed on the inactive-unassigned docket in November of 2006.  Consequently, Paper No. 7 has been re-filed as a supplemental complaint in UA-06-2863.  By separate Order that case has been activated and assigned.

[4]   After the filing of Defendants' dispositive motion and the issuance of the *Roseboro* letter, Plaintiff filed a letter questioning whether this court had received his motion to voluntary dismiss his case(s). Paper No. 23.  On April 27, 2007, this court informed Plaintiff that: (1) no such motion had been received for filing; (2) his case(s) remain active; and (3) he was responsible for filing any responsive pleadings.  Paper No. 24.  Plaintiff has not filed any additional pleadings with the court.

inappropriate. *Anderson*, 477 U.S. at 250; *see also Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co.*, 601 F.2d 139, 141 (4th Cir. 1979); *Stevens v. Howard D. Johnson Co.*, 181 F.2d 390, 394 (4th Cir. 1950). The moving party bears the burden of showing that there is no genuine issue of material fact. *See* Fed. R. Civ. P. 56(c); *Pulliam*, 810 F.2d at 1286 (citing *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979)).

When ruling on a motion for summary judgment, the court must draw all reasonable inferences in favor of and construe the facts in the light most favorable to the non-moving party. *See Tinsley v. First Union Nat'l Bank*, 155 F.3d 435, 437 (4th Cir. 1998). A party who bears the burden of proof on a particular claim must factually support each element of his or her claim. "[A] complete

failure of proof concerning an essential element...necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence. *See Anderson*, 477 U.S. at 256.

In *Celotex,* the Supreme Court stated:

> In cases like the instant one, where the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the "pleadings, depositions, answers to interrogatories, and admissions on file." Such a motion, whether or not accompanied by affidavits, will be "made and supported as provided in this rule," and Rule 56(e) therefore requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial."

*Celotex*, 477 U.S. at 324. However, "'a mere scintilla of evidence is not enough to create a fact issue.'" *Barwick v. Celotex Corp.*, 736 F.2d 946, 958-59 (4th Cir. 1984) (quoting *Seago v. North Carolina Theatres, Inc.*, 42 F.R.D. 627, 632 (E.D. N.C. 1966)). There must be "sufficient evidence

favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

IV.   Analysis

As a inmate sentenced to confinement, Plaintiff is entitled to receive reasonable treatment for his serious medical need. A prisoner presenting a denial of medical care claim must prove two essential elements. First, he must satisfy the "objective" component by illustrating a serious medical condition. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992); *Estelle v. Gamble*, 429 U.S. 97, 105 (1976); *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995); *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998). If this first element is satisfied, the prisoner must then prove the second subjective component of the Eighth Amendment standard by showing deliberate indifference on the part of prison officials or health care personnel. *See Wilson v. Seiter*, 501 U.S. 294, 303 (1991) (holding that claims alleging inadequate medical care are subject to the "deliberate indifference" standard outlined in *Estelle*, 429 U.S. at 105-06). "[D]eliberate indifference entails something more than mere negligence [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994). Medical personnel "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [they] must also draw the inference." *Id*. at 837.

There is no underlying distinction between the right to medical care for physical ills and its psychological and psychiatric counterpart. *See Bowring v. Goodwin*, 551 F.2d 44, 47 (4th Cir. 1977). A prisoner is entitled to such treatment if a "[p]hysician or other health care provider, exercising ordinary skill and care at the time of the observation, concludes with reasonable certainty (1) that the prisoner's symptoms evidence a serious disease or injury; (2) that such disease or injury

is curable or may be substantially alleviated; and (3) that the potential for harm to the prisoner by reason of delay or the denial of care would be substantial." *Id*. The *Bowring* Court further concluded that the aforementioned right to such treatment is based upon the essential test of medical necessity and not on the basis that such care is merely desirable. *Id*. at 48.

Based upon a review of the complaint and the materials presented by Defendants, it is abundantly clear that Plaintiff has failed to show that prison personnel failed to evaluate his mental health or were otherwise indifferent to his psychiatric, psychological, or medical needs. The unrefuted facts as presented by Defendants with regard to Plaintiff's care are as follows:

On February 2, 2006, Plaintiff assaulted Sgt. Talib and a mental health professional conducting rounds by squirting them with a liquid substance that smelled like urine. Paper No. 20, Ex. 1 at 3. His psychological file was reviewed prior to his being placed on a special management meal (food loaf) due to his disruptive behavior. It was concluded that he had no mental health disorder that would preclude his placement on food loaf. *Id*.

On February 3, 2006, Plaintiff was in fact transferred to CMHC for the third time at the request of nursing staff at the Metropolitan Transition Center ("MTC") infirmary where he had reportedly ingested 23 unidentified pills and had been sent to the University of Maryland Hospital Center ("UMHC").[5] Paper No. 20, Ex. 1 at 4-6. On February 5, 2006, Plaintiff was seen by a CMHC psychiatrist who found him alert and oriented, with pressured speech and psychomotor agitation. *Id*. He indicated he would harm himself or others and presented an "angry effect." *Id*. On February 6, 2006, Plaintiff was seen by the treatment team and indicated that he needed to get away from MCAC staff. He denied suicidal ideation and requested that suicide precautions be

---

[5] The toxicity screening at UMHC revealed nothing and the doctor at UMHC considered it unlikely that ingestion had occurred. Paper No. 20, Ex. 1.

discontinued. There was no evidence of depression, acute distress, or major mood disorder in his presentation. *Id*.

On February 7, 2006, Plaintiff was heard yelling profanities and instigating other inmates to complain that staff were not attending to their needs. *Id*. He informed a CMHC nurse that if discharged he would return by week's end with other inmates to create problems. *Id*. Plaintiff was discharged from CMHC to return to MCAC that same date with an Axis I diagnosis of Malingering and Bipolar Disorder NOS. *Id*. Upon arrival at MCAC he was once again placed on food loaf. *Id*.

The events of which Plaintiff complains are alleged to have occurred subsequent to his return to MCAC. After claiming to have attempted suicide by swallowing a razor and different pills on February 11, 2006, Plaintiff was taken to UMHC, where staff found no evidence to substantiate his claim. *Id*., Ex. 1 at 7; Ex. 2 at 4. Upon his return to MCAC he was placed in an isolation cell on suicide precaution watch. *Id*., Ex. 1 at 8-13. He was observed eating glass and was taken to the medical unit on several separate occasions on February 12, 2006.[6] *Id*., Ex. 1 at 10-12; Ex. 2 at 3-7. On February 13, 2006, Plaintiff was banging on his door complaining of "food problems;" presumably associated with his refusal to eat the food loaf. Paper No. 20, Ex. 1 at 13. He was observed consuming glass shards and was later seen by psychology associate Carrie Eckhauser, examined by a nurse at 10:30 a.m., and taken to the medical unit again approximately one hour later. *Id*., Ex. 1 at 13-14; Ex. 2 at 8-10. Eckhauser noted that Plaintiff made threats to hurt himself (biting himself and banging his head) and to possibly hurt staff if he was not taken off the food loaf. *Id*. He denied suicidal and homicidal ideation. *Id*., Ex. 1 at 15. Eckhauser found his behavior "manipulative and goal directed" for purposes of achieving removal from food loaf. *Id*. She

---

[6] Plaintiff indicated to medical staff that he had swallowed a screw, bolt, magnet and 5 to 6 pieces of glass. Paper No. 20, Ex. 2 at 3. The medical examination was normal and an abdominal x-ray was taken. *Id*., Ex. 2 at 6.

recommended that he be removed from suicide precautions and returned to his housing unit per medical clearance. *Id.* Plaintiff continued to be held on isolation and was subject to continuous observation until February 15, 2006, when he was returned to his housing unit and scheduled for a psychiatric follow-up in two weeks. *Id.*, Ex. 1 at 16-23; Ex. 2 at 13. On February 15, 2006, Plaintiff was seen by medical staff for his complaints that his handcuffs were too tight. The handcuffs were removed and he was examined and treated for swelling and discoloration. *Id.*, Ex. 2 at 11-12. On February 17, 2006, he was seen for a complaint of a sore on his wrist and provided ointment and Band Aids. *Id.*, Ex. 2 at 14.

Plaintiff was sent to the infirmary at MTC and placed back in an isolation cell on February 19, 2006, after breaking a light bulb and light fixture in his cell and claiming that he ate some of the broken glass.[7] *Id.*, Ex. 1 at 24-41; Ex. 2 at 16. He was seen by a psychology associate, who assessed Plaintiff's behavior as "more manipulative than clinical in nature ...." Paper No. 20, Ex. 1 at 24-41. Plaintiff stated that he wanted to be transferred out of MCAC to receive treatment and intended to act out behaviorally in order to achieve that goal. *Id.* He was observed talking casually with correctional officers after the discussion with the psychology associate. Plaintiff was again seen the next day by the psychology associate, who noted that Plaintiff denied homicidal ideation, but would not contract for safety and suicidal ideation. *Id.* The associate viewed Plaintiff's behavior as manipulative and goal-directed toward a transfer. *Id.*, Ex.1 at 34. By the end of the session he was laughing and joking with prison staff. *Id.* The psychology associate recommended that Plaintiff be returned to his regular cell, where he would remain in full restraints, be placed in a suicide smock in a stripped cell, and subject to hourly observation. *Id.*, Ex. 1 at 34 & 40. Plaintiff remained on

---

[7] According to the medical progress notes, however, Plaintiff claimed that he had swallowed a razor, 4 screws, metals, and pills. Paper No. 20, Ex. 2 at 16. He was evaluated by medical staff at the MTC infirmary where an x-ray was taken, and he was medically cleared and ordered to return to MCAC. *Id.*, Ex. 2 at 17-20.

this suicide watch until February 24, 2006, when his restraints were removed and his property returned.  *Id*., Ex. 1 at 41.

In May of 2006, Plaintiff resumed the aforementioned pattern of behavior, beginning after his placement on food loaf due to misbehavior (holding his food slot and masturbating in front of staff).  *Id*., Ex. 1 at 43.  On  May 18, 2006, Plaintiff indicated that he had taken multiple doses of a medication and was placed in isolation.  *Id*., Ex. 1 at 44-45.  While in isolation he showed no sign of suicidal ideation.  *Id*.  He was seen by psychology associate Eckhauser on May 19, 2006, and told her that he did not want to be on the special management meal.  Eckhauser saw no evidence of acute distress or psychosis and considered the taking of the medication to be manipulative and "designed for secondary gain."  *Id*., Ex. 1 at 46.  The Plaintiff was "contracted for safety" and returned to his housing unit.  *Id*., Ex. 1 at 45.

On May 23, May 25, and May 26,  2006, Plaintiff voiced complaints that he had open wounds on his right ankle, that he had swallowed foreign objects, and that he was experiencing stomach discomfort.  Paper No. 20, Ex. 2 at 21-23.  His wounds were cleaned, he was given a dose of activated charcoal, and he refused testing and further medication.  *Id*.

On May 27, 2006, Plaintiff was placed in the cadre unit for failing to comply with standard breakout procedures.  *Id*. , Ex. 1 at 47-49.  He was observed sleeping, eating, and talking with other inmates, but refused to see a nurse who came to the cadre unit to see him.  *Id*.  On May 28, 2006, he was seen by medical staff after complaining of chest pains and was later returned to his housing unit after the examination of his vital signs proved normal.  *Id*., Ex. 2 at 25-26.  On May 31, 2006, Plaintiff was again evaluated for placement on the special management meal after breaking the light fixture in his cell and the wooden frame of the visiting booth door in the cadre unit.  *Id*., Ex. 1 at 50

Defendants state that throughout this period Plaintiff was frequently seen by medical staff.

*Id.*, Exs. 1 & 2. They maintain that there is no showing that Plaintiff had a serious medical need and that the records demonstrate that prison and medical staff responded quickly and appropriately to Plaintiff's complaints. *Id*. The court agrees. The aforementioned history shows that in February and May, 2006, Plaintiff was, on different occasions, admitted to CMHC, taken to the MTC infirmary and UMHC, and placed in an isolation cell, because he had allegedly swallowed medication or foreign objects. Toxicity tests were negative and no evidence of the foreign objects were found, except that Plaintiff was observed placing glass in his mouth and did spit out a one inch piece of plexiglass.[8] Moreover, he was continuously observed and repeatedly seen by mental health and medical staff because of his pattern of behavior. He received treatment from general health care staff, as well as the individual assessments of mental health professionals. Further, while Plaintiff has been assessed with a Bipolar Disorder along with malingering, his behavioral and mental health problems--as related to his suicidal tendencies--were subject to the supervision and management of health care providers, who concluded that he engaged in the behavior to manipulate his housing assignment and the behavioral management actions (special management meals) imposed by MCAC staff. For these reasons, the court finds no Eighth Amendment deprivation in regard to Plaintiff's treatment.

V. Conclusion

---

[8] Plaintiff complained that Sgt. Talib permitted him to retain a piece of plexiglass. In his unopposed declaration, Sgt. Talib denies that he was unaware the Plaintiff had a piece of plexiglass, other than the one he confiscated from Plaintiff on February 14, 2006. Paper No. 20, Ex. 3. In any event, there is no demonstration that an Eighth Amendment right was violated. On February 14, 2006, Plaintiff was seen by a prison nurse after claiming to swallow plexiglass. *Id.*, Ex. 2. The examination revealed no bleeding, no scratching of the mouth, no gagging, no shortness of breath, and no anxiety. *Id*. Plaintiff spit out a clear piece of plastic about one inch in length. *Id*. He made no complaints about the after-effects of allegedly swallowing the plexiglass. *Id*.

For the aforementioned reasons, Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment, construed as a Motion for Summary Judgment, shall be granted.[9] A separate Order follows.


Date:   May 14, 2007                            /s/
                                        DEBORAH K. CHASANOW
                                        United States District Judge

---

[9] In light of this decision, the complaint against Defendants "Patuxent Institution, Director of Mental Health" and Hanson shall be dismissed.